**IN THE COURT OF APPEALS OF IOWA**

No. 22-0846
Filed September 21, 2022

**IN THE INTEREST OF M.B.-S. and K.S.,**
**Minor Children,**

**N.S., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.

        A father appeals the termination of his parental rights.  **AFFIRMED.**

        Nicholas Einwalter, Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Richelle Mahaffey, Des Moines, attorney and guardian ad litem for minor

children.

        Considered by Bower, C.J., and Vaitheswaran and Tabor, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights.  We find the grounds for termination have been established and termination is in the children's best interests.  We affirm.

**I. Background Facts & Proceedings.**

N.S. is the father of two children, K.S., born in 2017, and M.B.-S., born in 2020.  The children have different mothers.[1]

M.B.-S. was born prematurely, tested positive for THC, and was hospitalized for eight weeks.  The hospital alerted the department of human services (DHS) the child's parents, K.B. and N.S., visited only sporadically and were uninterested in learning to care for the child's special needs.  The parents agreed to a safety plan where the child would reside with the paternal grandparents.  The child was discharged from the hospital into the grandparents' care and subsequent custody, where he remains.  M.B.-S. was adjudicated a child in need of assistance (CINA) in October 2020.

The father shared custody and physical care of K.S. with the child's mother, T.M.  In October, the court found removal of K.S. from the father's custody was "necessary to protect the child from imminent danger due to the father's unresolved substance abuse, domestic violence[,] and mental health issues."  On December 17, K.S. was adjudicated a CINA.

The father has significant underlying mental-health issues.  He was ordered to participate in anger management and comply with mental-health treatment.

---

[1] K.S.'s mother has custody of the child.  The parental rights of the mother of M.B.-S. were terminated, and she does not appeal.

Although he complied with mental-health evaluations, his self-reports omitted significant past diagnoses and he discontinued taking his mental-health medications in mid-2021.

Throughout the CINA proceedings, the father provided inconsistent reports of his marijuana use to DHS, service providers, and substance-abuse evaluators. It appears he used marijuana daily throughout the first year of services. He asserts he does not use marijuana anymore, but in January 2022 refused to comply with drug testing without in-person visits with the children.

In July 2021, the father became upset during a visit. During his outburst, the father threatened violence against the DHS caseworker, including bombing her car. He was arrested and jailed for three months for violating his probation.[2] The father pled guilty to criminal charges for his threats, and in December, his sentence was suspended. Since his release from this jail term, he may only visit the children virtually.

At the termination hearing, both the father and M.B.-S.'s mother consented to the termination of their parental rights, stipulating it was in the child's best interests. During his testimony in K.S.'s case, the father stated termination of his rights to M.B.-S. was not in the child's best interests, "it's just forced on me" and he "gave up." However, no motion was filed to reopen the record or withdraw the father's consent to termination as to M.B.-S.

The hearing then focused on the termination of the father's rights relating to K.S. The State and DHS recommended transferring custody of K.S. to the mother

---

[2] The father was on probation for a conviction of assault while displaying a dangerous weapon.

and dismissing the termination petition. Upon learning the State no longer recommended termination as to K.S., the mother's attorney essentially took over the petition filed by the State.

The father has not provided any financial assistance or gifts to K.S. since the onset of the CINA proceedings, conditioning any support payments on talking directly with the mother. In the past, the father has harassed the mother's fiancé, resulting in a no-contact order; the mother has requested a no-contact order alleging domestic abuse; and the father threatened other violence against the mother and her family. He testified if the district court ordered he could only have supervised visitation, he would take the mother to court seeking unsupervised visitation.

The father admitted he had not scheduled a mental-health or substance-abuse evaluation as required in his sentencing order in the two months between sentencing and the termination hearing. But, he had signed up for the required assaultive behavior classes, which were scheduled for the following week. He had engaged in therapy in the past but was not involved at the time of the hearing, and he testified he was not taking medications as needed for some of his mental illnesses. In January 2022, the father flatly refused to participate in drug screens or engage in services until he "saw his kids" in person and accused DHS of being human traffickers.

The court terminated the father's rights regarding K.S. under Iowa Code section 232.116(1)(e) and (f) (2022). His parental rights in regards to M.B.-S. were terminated under section 232.116(1)(a), (e), and (h). The father appeals.

**II. Standard of Review.**

"We review termination of parental rights de novo." *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). We give weight to the trial court's findings of fact, especially when considering the credibility of witnesses, though we are not bound by them. Iowa R. App. P. 6.904(3)(g).

**III. Analysis.**

On appeal, the father asserts his parental rights should not have been terminated under any grounds asserted relating to either child, termination is not in the children's best interests, and an exception to termination should have been applied since each child is in the custody of a relative. The State argues the grounds for termination have been established as to M.B.-S. and it is in the child's best interests. The State took no position as to the termination of the father's parental rights relating to K.S. at trial or on appeal.

> We use a three-step analysis to review termination of parental rights. First, we "determine whether any ground for termination under section 232.116(1) has been established." If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."

*In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (internal citations omitted). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015).

**A. Grounds for termination.**

*1. M.B.-S.* The juvenile court terminated the father's parental rights with respect to M.B.-S. under section 232.116(1)(a), (e), and (h). Under paragraph (a), "The parents voluntarily and intelligently consent to the termination of parental rights and the parent-child relationship and for good cause desire the termination." The father asserts he withdrew his consent to termination of his rights relating to M.B.-S. He asks us to infer withdrawal of consent from testimony during the hearing relating to K.S., where he stated termination of his parental rights was not in M.B.-S.'s best interests and he had only consented to termination because he gave up and thought DHS would keep harassing him if he did not consent to termination. Immediately after that testimony, the father stated his willingness to consent was based on the child's placement with the paternal grandparents where the father could continue to see M.B.-S. The father did not move to reopen the record or withdraw his consent to the termination of his parental rights during or after the termination hearing.

When questioned about his consent during the portion of the hearing devoted to M.B.-S., the father testified:

> Q. And are you voluntarily consenting to the termination of parental rights and the parent-child relationship that exists between you and [M.B.-S.]? A. Yes.
> . . . .
> Q. Okay. And again, you are consenting at this time to the termination of your parental rights because you believe it is in the best interest of [M.B.-S.]? A. Correct.
> . . . .
> Q. . . . At this time you've been given significant amount of time to do what the court has been asking of you; correct? A. Correct.

Q. Okay. And at this time, you just believe that at this point that your child is in the safest place to ensure his safety going forward? A. Yes.

Q. And that placement is the best placement for him going forward until he's [eighteen]? A. Yes.

The evidence for termination of parental rights relating to M.B.-S. was fully submitted and the record closed before the hearing relating to K.S. began. The fact the father "changed his mind after termination does not invalidate the earlier consent." *See In re K.P.*, No. 19-1648, 2020 WL 110409, at *1 (Iowa Ct. App. Jan. 9, 2020); *see also In re H.S.*, No. 17-1902, 2018 WL 540998, at *1 (Iowa Ct. App. Jan. 24, 2018) ("[T]he mother cannot be heard on appeal to complain about a ruling she agreed was appropriate."). We find the father consented to termination and his later testimony does not change that fact. We affirm the termination of the father's parental rights relating to M.B.-S.

*2. K.S.* The court terminated the father's rights regarding K.S. under Iowa Code section 232.116(1)(e) and (f). To terminate under paragraph (f), the State must establish the child is four years of age or older, has been adjudicated a CINA, has been removed from the parent's care for at least twelve of the last eighteen months, and cannot be returned to the parent's custody at the time of the termination hearing. The father does not contest the first three elements: K.S. was four years old, was adjudicated a CINA, and had been removed from the father's custody for more than a year.

The father asserts the child could have been safely placed in his home at the time of the termination hearing. He argues the aggression and mental-health issues the court cited are due to the trauma of having the children

removed from his care and he would engage in services if the children were in his care.[3]

The father has serious mental-health issues, some of which require medication. He chose to stop taking his prescribed medications, and about two weeks later had the outburst to DHS workers which led to his new criminal convictions. At trial, he stated he was not prescribed any medication for his mental health, but eventually admitted it was because he had not followed up with his psychiatrist. The father lived with K.B., who was not considered a safe caretaker for the child. He refused to participate further in services without in-person visitation and refused to pay child support unless those visits were unsupervised.

There is clear and convincing evidence the child could not be returned to the father's custody at the time of the hearing. We affirm the termination of the father's parental rights regarding K.S. under Iowa Code section 232.116(1)(f).

**B. Best interests and exception to termination.**[4] The father combines his best-interests and exception-to-termination analyses, asserting that because

---

[3] As noted, the State did not take a position as to K.S., but asserts M.B.-S. cannot be returned to the father's care because of the father's "escalation and threatening behaviors"; failure to follow through with expectations, evaluations, and drug testing; failure to address his assaultive behavior; and inability to demonstrate stability and sobriety.

[4] The father briefly asserts a six-month extension would have allowed him to retain his rights, but he makes no argument and did not preserve error on this issue below.

each child is protected in their current placement, severing the parent-child bond is not in the children's best interests.

For M.B.-S., the father suggests converting to a guardianship with the paternal grandparents would be in the child's best interests. While in some instances the parent and guardian have a relationship to support such an arrangement, generally "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted). M.B.-S. has been in the grandparents' care his entire life, and the father presented no evidence the grandparents would agree to a guardianship. The child is too young to express a preference, and termination was recommended by both the DHS caseworker and the guardian ad litem. Termination is in M.B.-S.'s best interests with no exception to termination.

The father testified he had a strong relationship with K.S. and the child deserves to have a relationship with the father. K.S.'s mother testified the father was "very controlling and abusive" when they were together and she would not feel safe co-parenting with him. The father testified he would "for sure" attempt to modify any custodial decree that placed the child with the mother and required visits be supervised. Given his continuing mental-health and anger issues, refusal to cooperate with services, and expressed intent to modify any custodial order limiting his visitation, we agree with the juvenile court that continuing the relationship is not in the child's best interests. We decline to apply any of the permissive exceptions to termination and affirm the juvenile court's order.

**AFFIRMED.**